**Del JONES, Plaintiff,**

**v.**

**THE VESSEL NAIR, her engines, appurtenances, apparel, tackle and furniture; and Ignacio Gavaldon Guajardo, individually, and Pesquera Nair, S.A. de C.V., Defendants.**

**Civ. No. 83–0830–K(I).**

United States District Court, S.D. California.

April 27, 1984.*

* This opinion, previously published at 586 F.Supp. 507, is republished to reflect corrections made in the appearances of counsel.

Peter R. Thompson, Thompson & Thompson, San Diego, Cal., for plaintiff.

Robert G. Dyer, Dyer, Brewer & Walton, San Diego, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

KEEP, District Judge.

Plaintiff, DEL JONES, alleges to have suffered personal injuries aboard the tuna purse seiner NAIR on April 19, 1982. He has filed a Complaint alleging as grounds for this action the Jones Act, 46 U.S.C. § 688, and the General Maritime Law of the United States.

The defendants, IGNACIO GAVALDON GUAJARDO ("Gavaldon") and PESQU-ERA NAIR, S.A. de C.V., (Pesquera) move for an Order dismissing the action for failure to state a claim on which relief may be granted and on grounds that the Southern District of California is an inconvenient forum, as is any Court within the United States, to adjudicate the action. Because there have been a deposition transcript of Gavaldon and affidavits filed herein, the Motion will be treated as one for summary judgment under Federal Rule of Civil Procedure 56.

The submissions of the parties establish that the vessel NAIR is owned by Pesquera which is a corporation organized and formed under the laws of Mexico in December, 1980. Pesquera has five shareholders, all of whom are citizens of Mexico. All the shareholders are also legal residents of Mexico. The majority shareholder, the defendant, Gavaldon, and his wife reside in Bonita, California, for temporary yet regular intervals. Neither has authorization to reside permanently in the United States.

The corporation's office is in Ensenada, Mexico, and is run by three Mexican employees. The vessel NAIR is a tuna purse seiner. Pesquera derives no income from the sale of fish to the United States. Although the vessel has called at San Diego at infrequent intervals for repairs, the corporation does not derive income from those visits. The ship flies the Mexican flag and is precluded from offloading its fish in the United States. Furthermore, the vessel is licensed to fish by the Government of Mexico and is authorized to fish only in Mexican or international waters.

The corporation is not qualified to do business in California or the United States. Neither the corporation nor the defendant Gavaldon pay any California or federal income tax in the United States. Both defendants do pay taxes in Mexico. The defendant's insurance policy excludes injury or illness claims for crew members on the NAIR, since these are covered by the Mexican Social Security system.

Plaintiff claims to have been injured on or about April 19, 1982, while working aboard the vessel NAIR. At that time, 17

of the 20 crew members were citizens of Mexico. The remaining three, including the plaintiff, were citizens of the United States.

Plaintiff began working aboard the vessel in August, 1980, as a helicopter mechanic. He joined the ship in Panama and signed an employment contract, in Spanish, in Panama at the time he began working on the vessel. However, negotiations for the contract were concluded in California prior to that time. The first trip ended in December of 1981 in Mazatlan, Mexico. Plaintiff's next trip began in January of 1982 in La Paz, Mexico. He again signed an employment contract in Mexico. The alleged accident occurred on April 19, 1982, while the vessel was on the high seas off the coast of Mexico.

The alleged injury occurred when the vessel was making a set on tuna. According to standard practice, plaintiff was using a metal tube-like launcher to launch firecrackers into the water to prevent the fish from swimming out of the net before it could be fully closed.

While using the device, plaintiff claims that one of the firecrackers exploded prematurely, lacerating the heel of his left hand. Plaintiff did not leave the vessel until the trip ended in Mazatlan, Mexico. Plaintiff returned to the vessel in August of 1983 when it was ready to take its next trip. He did not lose any time from work, as the vessel was in port for approximately two months. Plaintiff voluntarily quit the boat shortly before the trip of August of 1983 was to begin for reasons unrelated to his injury.

The issue is whether plaintiff has a cause of action under the Jones Act and under the General Maritime Law. *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), establishes several choice-of-law criteria applicable to Jones Act cases. Those principles have been declared equally applicable to cases arising under the General Maritime Law. *Romero v. Internatl. Terminal Operating Co.*, 358 U.S. 354, 381–82, 79 S.Ct. 468, 485, 3 L.Ed.2d 368, 388 (1959). *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), elaborated on those principles.

■ The choice-of-law principles established by *Lauritzen, Romero* and *Hellenic* are: (1) The place of the wrongful act; (2) the law of the flag; (3) the allegiance of domicile of the injured person, (4) the allegiance of the defendant shipowner; (5) place of contract; (6) inaccessability of a foreign forum; (7) law of the forum and (8) the base of operations of the defendant.

■ *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 85 (9th Cir.1980), interpreting the *Lauritzen* standards stressed that, in general, the law of the flag is more important than most of the other factors, and at the other end of a sliding scale of importance were inaccessibility of the forum and law of the forum. The test is not a mechanical one, according to *Rhoditis*, and depending on the facts of the case, some factors have been given a greater degree of consideration than others. *Phillips, supra*, at 85.

The cases show that the mere fact that there is some sort of American interest that will be furthered if the suit is retained in the United States is not enough to retain the lawsuit. When the links to the United States are weak and the interests of another sovereign are substantial, the Jones Act is not applicable. *Phillips, supra*, at 86. *Chirinos de Alvarez v. Creole Petroleum Corp.*, 613 F.2d 1240, 1246 (3d Cir.1980).

*Rhoditis* introduced the base of operations test and reiterated that the list of seven factors in *Lauritzen* is not intended to be exhaustive. Both sides agree that the eight criteria of *Lauritzen* and *Rhoditis* are the applicable standard. Plaintiff and defendants disagree, however, on the result of their application in the case at bar. The Court is cognizant that some of the issues before it were decided by Judge Nielsen in *Bilyk v. Pesquera Nair, S.A. de C.V., et al.*, at 83–800–N. Although the incidents alleged were different, the facts in the *Bilyk* case with respect to vessel ownership and other *Lauritzen* criteria were very similar to those herein. Judge

Nielsen dismissed the case on grounds the plaintiff was unable to state a cause of action under the Jones Act or the General Maritime Law. Application of the *Lauritzen* and *Rhoditis* factors compels the same result in this case.

## PLACE OF THE WRONGFUL ACT

The injury is alleged to have occurred on the high seas. Therefore, the place of the act is not favorable to either party.

## LAW OF THE FLAG

The vessel flew the Mexican flag, it is owned entirely and exclusively by a Mexican corporation whose stockholders are Mexican citizens. Plaintiff claims that contrary to *Lauritzen* this factor should not be given heavy consideration, citing *Phillips*. The reason that the law of the flag, however, has traditionally carried great weight is that there must be some consistent law on shipboard, because it cannot change at every port or every time a vessel enters into another country's territorial waters. Hence, according to *Lauritzen*, experience shows no better rule than that of applying the law of the sovereignty that licenses and regulates the ship.

In *Phillips*, the Court applied the law of Trinidad though the vessel flew the American flag. The vessel involved, however, was a drilling vessel whose operations were at a fixed location. The Court felt the *Lauritzen* rationale with respect to the flag did not apply in *Phillips* because the vessel operated at a fixed location. Therefore, in *Phillips*, the Court placed greater weight on the place of the wrongful act. *Phillips*, however, does not stand for a de-emphasis of the law of the flag in the case before this Court. The vessel NAIR did not operate at a fixed location; it was a tuna vessel, it was fishing in international waters, and therefore, the rationale of *Lauritzen* with respect to the law of the flag applies in this particular case and favors the application of Mexican law.

## ALLEGIANCE OF THE INJURED CREW MEMBER

Plaintiff is a United States citizen. Plaintiff claims that this factor should weigh most heavily. However, *Rhoditis* and *Phillips* clearly establish that in the Ninth Circuit, citizenship is but one of the factors that should be considered. It received greater emphasis in *Phillips* because the accident took place in the territorial waters of Trinidad and the seamen were Trinidadian nationals whose employment never took them beyond its territorial boundaries. Those factors are absent herein. Plaintiff's employment was clearly outside the territorial waters, as well as the boundaries of the United States.

## ALLEGIANCE OF THE SHIPOWNER

Both Pesquera and Gavaldon owe their allegiance to Mexico. Pesquera is a Mexican corporation organized and existing under the laws of Mexico, it pays Mexican taxes, having its principal place of business and only office in Mexico; it conducts its operations out of Ensenada, Mexico. It is owned by Mexican citizens and does not derive any income from anything other than its Mexican fishing operations. Defendant, Gavaldon, is a citizen of Mexico, pays Mexican taxes, and is not a permanent resident alien of the United States.

Plaintiff claims that it is not clear that defendant's allegiance is wholly to Mexico. Plaintiff claims that because defendant continues to reside in the United States, he owes significant allegiance to this country. He further claims that the corporation has made a conscious decision to seek out and rely on American labor, products and technicians.

There is no evidence to support these statements, however. There is no adequate support for these assertions in the defendant's deposition or the affidavits before the Court. While there are some facts that indicate that defendants rely on American labor to some extent because they have their ship repaired in the United States, the facts do not show that defend-

ants significantly rely on American labor, products and technicians.

## THE PLACE OF CONTRACT

Plaintiff negotiated his first contract in California but it was signed in Panama. The contract which covered the trip on which the plaintiff was injured was signed in Mexico. In *Lauritzen,* the Court stated that the place of such contracts is fortuitous as a ship takes on crew in any port where it may be found. *Lauritzen* said the practical effect of making the *lex loci contractus* govern all tort claims during the service would be to subject a ship to a multiple system of law, to put some of the crew in a more advantageous position than others, and not unlikely in the long run, to diminish hirings in ports of countries that take better care of their seamen.

The Court concludes, therefore, that the place of contract is not a substantial influence on the choice-of-law question. This is especially true where the place contracting is somewhat unclear, as it is here, where negotiations for the first employment contract were in California but the two contracts were signed in Panama and Mexico.

Plaintiff claims that *Lauritzen* should not apply here because the custom, pattern and habit of defendants was to negotiate and enter into contracts with skilled American technicians in the United States. Again, this statement is not substantiated. The fact that there were only three crew members who were United States citizens at the time of the alleged injury weighs against the argument of plaintiff.

## INACCESSIBILITY OF FOREIGN FORUM

Plaintiff claims Mexico is an inaccessible forum because plaintiff reads no Spanish and would have to leave this country and assert his claim in a foreign language and under a foreign law. However, plaintiff signed a contract in Mexico with a Mexican employer and worked on a vessel off the coast of Mexico. Mexico provides a compensation system for crew members on Mexican ships that are injured or become

ill. Looking at these factors, Mexico does not appear to be inaccessible.

## BASE OF OPERATIONS

The base of operations clearly appears to be Mexico. The only office of the corporation is in Ensenada, Mexico. The corporation only has an account in the United States to purchase hardware. It is not an operating account. All of the vessel NAIR'S operations appear to be monitored, supervised, recorded and carried out by its office in Ensenada, Mexico. In addition, fish caught are unloaded exclusively in Mexico.

Plaintiff claims that the Ensenada, Mexico, office is a shell and that the business is run by defendant, Gavaldon, from his Bonita, California, residence. The evidence before the Court, though, does not support that conclusion. There is evidence defendant, Gavaldon, lives there sometimes and that he has a radio so that he can be in contact with his boat. But that does not indicate the Ensenada, Mexico, office is a shell and that the business is truly run by defendant from California.

Defendant admits in his deposition that he has a job title, "administrador unico" with the corporation that involves conducting the company, every aspect of it. However, plaintiff errs in stating that defendant's wife is the accountant. Page four of his deposition states that a Mexican employee, Eva, is the accountant and works in the Ensenada, Mexico, office. Plaintiff also claims that at the time of the deposition, the captain and all the technicians were Americans and that this is proof defendant's base of operation in the United States. Plaintiff fails to state that these men amounted to only three crew members in a crew of 20.

In *Phillips,* the Court focused on the base of operations of the relevant business venture rather than on the corporate ownership. The Court weighed the connecting factors between the shipping transaction regulated and the national interests served by the assertion of authority. Under *Phil-*

*lips,* it is apparent that the base of operations in this case is Mexico. Day-to-day operations were conducted in Mexico. The vessel begins and ends its trips in Mexico. It is authorized only to unload in Mexico, a significant factor when one talks about a tuna vessel whose sole function is to find, capture and unload fish. Obviously, the overall transaction is closely related to Mexico.

In *Phillips,* the Court referred to a case that involved an American corporate defendant that controlled the finances, hiring, making of contracts, purchase of supplies and replacement parts, and a vessel flying the American flag. The Court found that "matters concerning ownership of the vessel and corporate relationships are intangible to the point of being ephemeral in the face of the tangible operating factors," showing that the overall transaction was more closely related to Great Britain. *Phillips, supra,* at 88, quoting from *House v. Santa Fe Internatl. Corp.,* 1978 A.M.C. 1904, 1905 (S.D.Tex.1978).

### LAW OF THE FORUM

Because defendants were served while temporarily in port in the United States, does not mean that the law of the United States should be applied and both sides agree to that. The Courts have seemed to use this last factor as a summary of the others. After appropriately weighing each factor, it does not seem that the points of contact in this transaction between the two nations show that the interests of the United States are as strong, much less stronger, than the interests of Mexico. The only factor that appears to weigh in favor of the application of United States law is plaintiff's American citizenship.

The *Lauritzen* and *Rhoditis* criteria appear to be an attempt by the United States Supreme Court to fashion a method of analyzing the foreseeability that the law of a given nation would be applied in a lawsuit. In this case, it was clearly foreseeable to plaintiff and anyone else on the vessel NAIR that Mexican law would be applied.

 This was a tuna vessel that operated out of Mexico. It could only unload its cargo in Mexico. It could not unload its cargo in the United States. Its contracts are in Spanish. It had a predominantly Mexican crew. It was owned by a Mexican corporation. For these reasons and those discussed above, it would be foreseeable that if there were an injury such as this, it would be governed by the laws of Mexico, which govern and regulate the actions of the corporate defendant, its vessel the NAIR, and the individual defendant, its subject.

The Court, therefore, grants the defendants' Motion for Summary Judgment for failure to state a claim upon which relief may be granted and for inconvenient forum.

